491 P.2d 507

**Stewart BAKER, Plaintiff-Appellee,**

v.

**Gene BAKER, Defendant-Appellant.**

**No. 9162.**

Supreme Court of New Mexico.

Dec. 13, 1971.

McDermott, Connelly & Stevens, Santa Fe, for appellant.

Bachicha & Corlett, Santa Fe, for appellee.

## OPINION

OMAN, Justice.

This cause is before us on appeals from an order fixing the custody of two minor children and from an order denying a motion to extend the time within which to

file the transcript with this court as required by Supreme Court Rule 14 [§ 21–2–1(14), N.M.S.A.1953 (Repl.Vol. 4, 1970)]. We reverse both orders.

Briefly and chronologically the pertinent facts are as follows:

(1) Appellee and appellant were formerly husband and wife and they had two daughters, Kelty and Eliza. These children were 7 and 5 years of age respectively at the time of the entry of the custody order now before us.

(2) Upon the divorce of the parties in Harris County, Texas, the custody of the two children was awarded to their mother, appellant, with certain rights of visitation in their father, appellee. The father's visitation rights were subsequently modified on December 26, 1968 by the Texas court.

(3) Problems arose between the parties relative to the exercise by the father of his visitation rights. These problems became more serious when the mother and the two children moved from Houston, Texas to Santa Fe, New Mexico on about August 15, 1970. The father continued to reside in Houston, Texas.

(4) On September 25, 1970, the father filed his petition in the district court of Santa Fe County seeking certain "visitation rights with the minor children of the parties."

(5) A reading of the entire transcript of the trial proceedings, which were conducted on November 11 and 12, 1970, clearly shows that the evidence adduced by both sides related to issues properly cognizable in a proceeding for the purpose of determining visitation rights. Some of this evidence would also have been germane to a determination of the custody of the children, had there been a custody issue raised by the parties.

(6) All the evidence was presented and the parties rested their cases on November 11. The proceedings were resumed at 9:30 the following morning. From then until 12:15 p. m., when a recess was taken until 5:15 p. m., most of the time was consumed by the trial court in announcing its decision and reasons therefor. In fact the report of this portion of the proceedings consumes 55 pages of the transcript.

(7) Near the end of the 44th page of the court's announcement of its decision and reasons therefor, the trial court stated:

"My best judgment is that the pleadings are amended to conform to the proof, and the proof shows me that the custody of Eliza should be removed from Mrs. Baker and placed in Mr. Baker. The appellate court well may not agree with that, but that will be up to the appellate court. * * *"

This was the first and only time in the entire proceedings that reference was made to an attempt to convert the proceedings from one concerning visitation rights to one awarding custody, or to any suggested amendment of the pleadings to conform to the proof in this regard. We have above stated that the evidence adduced was germane to the issue of visitation rights as raised by the pleadings.

In three other instances and in different contexts the trial court did refer to custody. Early in the trial and during the giving of the testimony of the father, who was the first witness, reference was made to the limitation of a hearing on custodial and visitation rights to events which have transpired since the last preceding hearing. In a subsequent exchange between the trial court and the mother's attorney, the court stated: "Well, that has no bearing on the issues. This matter concerns his custodial rights."

After all the evidence had been adduced and the question was raised as to whether to proceed with arguments at that time or wait until the following morning, November 12, the trial court stated:

"It has been as long for me as it has been for you. I have been in and through a lot of custody cases and I don't anticipate you can bring up something I haven't heard already, but you

· might, and if you do and if it's material and persuasive I want time to think about it."

(8) As its reasons for deciding to leave the custody of Kelty with her mother, with no rights of visitation in the father, and awarding the custody of Eliza to the father, with no rights of visitation in the mother, the trial court stated in part:

(a) It believed the ideal situation would be for the mother to have custody of both children, with extensive visitation and partial custody rights in the father.

(b) It wanted the mother " . . . to have both children but not on her terms, because her terms are diabolically bad. * * *"

(c) "* * * Mrs. Baker is going to ruin Kelty's life. She is going to turn Kelty against men so that Kelty will be totally and completely incapable of having a wholesome relationship and marriage to a man—in my judgment. * * *"

(d) If Eliza continues indefinitely in the custody of her mother she will be "* * * subjected to the same grave danger that I [trial judge] think has already overtaken Kelty. * * *"

(e) The reason for "* * * awarding custody of Kelty to Mrs. Baker without visitation rights and custody of Eliza to you [Mr. Baker] without visitation rights is that I [trial judge] am undertaking to apply a type of shock therapy, I'm talking about Court shock therapy. * * *"

(9) Just before concluding his lengthy reasoning for converting this "visitation rights" hearing into a "custody" hearing and making an award opposed by both parents [although the father is now apparently reconciled to the award], the trial court stated: "* * * I think that the judgment in this Court should be entered not later than five o'clock this afternoon and that Mr. Baker should take the custody of Eliza not later than five, five-thirty or six today. * * *"

(10) The trial court recessed at 12:15 p. m. The mother sought prohibition in this court that afternoon, but her petition was denied. The trial court reconvened at 5:15 p. m. Shortly thereafter the order of custody, which had been prepared by the father's attorney, was signed and entered. The trial court observed:

"I would like for the record to show if it were an earlier hour and this matter was not such of an urgent nature, and not at least tentative plans on behalf of the defendant [the mother], through her counsel, to get into the Supreme Court as fast as possible [to seek supersedeas and stay], I would have the Order redrawn or amended to show several things. . . . I would have had, had I had time and drawn the Order to suit me precisely and categorically, that the continuation of Eliza in the custody of her mother would calculate irreparable, irreversible, and I believe harm of a psychological nature and of great seriousness. I will sign it like it is in view of the hour and what apparently is waiting in the wings to develop."

(11) This court, very shortly after the entry of the order, granted supersedeas, fixed the amount of the supersedeas bond and stayed the execution of the order.

(12) The mother proceeded immediately to perfect her appeal by filing notice of appeal on November 12. On February 10, 1971, an order was entered extending the time until March 29, 1971, within which to file the transcript in this court. A subsequent motion to extend the time until April 28 was denied and an order entered accordingly. We granted leave to file the transcript in this court.

As to the appeal from the order denying a further extension of time in which to docket the appeal from the custody order, we must agree with the trial court that counsel for appellant was dilatory in some respects. We condemn unnecessary delays and expect full compliance with the rules of this court. However, appeals should generally be decided on their merits, and particularly so this one which concerns the welfare of two young sisters, as well

as the rights of their parents to their custody and visitation, and in which the requested extension of time could not have prejudiced appellee to any appreciable degree, if at all. See the opinions in the following cases for discussions of this court's policy of deciding appeals on their merits: State v. Reyes, 79 N.M. 632, 447 P.2d 512 (1968); Alamogordo Federal Savings & Loan Ass'n v. Snow, 66 N.M. 216, 345 P.2d 746 (1959); Barelas Community Ditch Corp. v. City of Albuquerque, 61 N.M. 222, 297 P.2d 1051 (1956).

The trial court abused its discretion in refusing to grant the requested extension of time.

█ As to the appeal from the custody order, we reverse on two grounds. First, we fully recognize that the trial court has wide discretion in determining whether the custodial provisions of an order or decree should be modified. Fox v. Doak, 78 N.M. 743, 438 P.2d 153 (1968). We also appreciate that if an issue is litigated by either express or implied consent of the parties, then the trial court is obliged to treat this issue in all respects as if it were pleaded. Wynne v. Pino, 78 N.M. 520, 433 P.2d 499 (1967). However, as stated above, the father sought by his pleadings only certain "visitation rights with the minor children," and nothing was ever said by him or his counsel in the pleadings or in the entire proceedings about seeking custody of the children, or either of them. The record clearly evidences surprise and doubt on the father's part concerning the wisdom of the court's decision to separate the children, give him total custody of Eliza and no visitation rights with Kelty and the mother total custody of Kelty and no visitation rights with Eliza. He apparently decided to accept this decision after the proceedings were concluded in the trial court, except for the entry of the order and a discussion between the trial court and counsel concerning the entry and the matters of supersedeas and stay.

The mother was so surprised and upset that she had to be placed under medical care. Perhaps this is what the trial court meant by "Court shock therapy." If so, it fails to gain our sympathy or approval.

It is apparent that the issue of custody was not litigated, and, as the trial court anticipated, we do not agree the pleadings should have been amended to conform to the trial court's concept of the proof, nor do we agree the matter of visitation rights should have been completely ignored and the custody of Eliza placed in her father.

█ Secondly, there was no evidence to indicate the mother was fit to have the custody of Kelty, but unfit to have the custody of Eliza. In a proceeding to modify a custody provision, the burden is on the moving party to satisfy the court that circumstances have so changed as to justify the modification. Merrill v. Merrill, 82 N.M. 458, 483 P.2d 932 (1971). Here the trial court was satisfied that the custody of Eliza should be changed without any issue in regard thereto ever having been raised or litigated, and without any evidence to show her best interests and welfare would be served by the ordered change. Every presumption is in favor of the resonableness of the original decree of the Texas court awarding the custody of both children to the mother. Merrill v. Merrill, supra; Kerley v. Kerley, 69 N.M. 291, 366 P.2d 141 (1961).

The orders of the trial court are reversed and the cause remanded with directions to conduct such further proceedings herein as the trial judge who hereafter presides over this case may deem proper under the pleadings and consistent with this opinion.

It is so ordered.

COMPTON, C. J., and McMANUS, J., concur.